## Maples *v.* Hicks.

[ MARCH 20, 1844. ]

A clerical omission on the part of the prothonotary to put his signature to the jurat, after swearing the defendant to his affidavit of defence, does not vitiate the affidavit; the defendant appearing personally in court, and expressing his willingness to be sworn again.

Taking a new note or bill from the same parties, no one being off who was on the old, the securities being of equal effect, is not an extinguishment of the former, and the holder may sue on either when the last becomes due.

But if on the new note or bill the name of one of the endorsers is left off, and the new bill, payable at a future day, is accepted without the knowledge of such endorser, it is giving time to the maker or acceptor, and discharges him whose name is left off.

THIS was an action by the endorsee of a bill of exchange for $553 82, at three months, dated March 8th, 1842, against the drawer. The bill was regularly presented at maturity, and protested for non-payment, and notice given to the drawer and endorser.

On the 13th July, 1843, the defendant filed, in the prothonotary's office, a paper endorsed "affidavit of defence," of which the following is a copy:

The said John Hicks, being duly sworn, saith, that he hath a defence to the whole cause of action filed in this case, of the nature and character following, to wit: 1. That he, the defendant, had no notice given him of the non-payment of the draft sued on, and was by such default discharged from all liability to pay the said draft. 2. That the said plaintiff took from the acceptor of the said draft new notes, extending the time of payment of the debt without the consent of this defendant, to wit, on the 18th of October, 1842, one, at six months, for $158 52, one, at seven months, for $217 78, and one at eight months, for $200, being for principal and interest, &c., of the draft now sued on.           (Signed,)       JOHN HICKS.

Sworn to and subscribed before me, }
    this 13th day of July, 1843.     }

[ Maples *v.* Hicks. ]

Rule to show cause why judgment should not be entered for plaintiff for want of an affidavit of defence.

*Perkins,* for plaintiff, contended that this was not an affidavit of defence, because it had not been sworn to; and that no such affidavit could now be put on record, inasmuch as the time for filing it had expired.*

*E. K. Price,* for defendant, replied that the affidavit had been regularly sworn to before the prothonotary, although that fact did not appear on its face. The defendant was in court, and could be sworn to it again.

The prothonotary here stated to the court, that he had sworn the defendant to the affidavit before filing it, but had inadvertently omitted to put his signature to the jurat.†

SERGEANT, J.—This is merely a clerical omission of an officer of the court, and the defendant being present and willing to be sworn again, the objection is overruled.

This point having been decided, an argument arose as to the sufficiency of the facts set forth in the affidavit, as a defence.

*E. K. Price,* for defendant.—The principle of law is undisputed, that if after a bill or note has become due, the holder for adequate consideration agrees with the drawee of the bill, or maker of the note, to give him time for payment, without the concurrence of the other parties

---

* The affidavit may be filed at any time before motion for judgment. A party who does not enforce his right at the first moment, shows he has not suffered by delay, and the signing of judgment is not imposed as a penalty. *Gillespie* v. *Smith,* 1 Harris 65.

† In *Shortle* v. *Stockton,* the supreme court held, that where the affidavit, on an appeal from an award, which was on the same sheet with the recognizance, was subscribed by the appellant, and the recognizance was subscribed by the prothonotary, but the affidavit was not attested by him; that the defect was fatal, and that it could not be cured by parol evidence of the prothonotary that the oath had, in fact, been taken. 7 Watts 526.

E

[ Maples *v.* Hicks. ]

entitled to sue such drawee or maker of the bill or note, they will thereby be discharged from all liability, although the holder may have given due notice of the non-payment. And if, without such a consideration, he take a renewed bill, and give time, such bill is a fresh security, and he thereby discharges the drawer and endorsers. And he contended, that according to the decisions in Pennsylvania, the smallest benefit or accommodation was sufficient to create a valid consideration for a promise. The affidavit distinctly states, that the plaintiff extended the time of payment of the debt without the defendant's consent, and that the plaintiff took from the acceptor several new notes for the one on which suit is brought. This, then, was both giving time and taking fresh security, and the defendant is in consequence discharged. This court has already decided these points in *Okie* v. *Spencer*, 2 Whart. 253; and it had been unequivocally decided before in England, in the case of *Gould* v. *Robson*, 8 East 576.

*Perkins*, contra:—A careful examination of the law upon this subject, will show the principle to be this: that where new negotiable paper is taken as collateral security, at the maturity of a promissory note or bill of exchange, without the consent of the endorser or drawer, they will be thereby discharged. But where the note or bill has been protested, and the parties continue in default, the accepting of such new paper does not release the drawer or endorser, although done without their knowledge or consent. In every case cited by the other side, the fresh security was taken at the time the original paper matured, and not afterwards. In the present case, the new notes were not given until four months after the maturity of the bill on which the suit is brought.

Here, then, the acceptor was in default, and the bill protested. Four months elapsed, and neither the acceptor nor defendant paid or offered to pay the bill. They were

[ Maples *v.* Hicks. ]

both liable. It was therefore to the interest of the defendant, that the plaintiff should endeavour to obtain payment from the acceptor; and having done so, the defendant ought not to be allowed to say that he was thereby discharged.

The notes which were given, were not of a higher character than the bill in suit, and contained the name of no new party on them. They cannot, therefore, be considered a fresh security.

SERGEANT, J.—I apprehend they included the principal and interest due at the time they were given, as well as the charge for the protest.

*Perkins:*—Admitting that to have been the case, still they do not form a new security. They simply promised in effect what the bill itself promised. *Okie* v. *Spencer,* (2 Whart. 257–8.) Besides, the affidavit does not state that the defendant was an accommodation drawer, which would make him merely a surety. If the defendant was the original debtor, he is certainly not discharged; and if he was not, he was bound to say so in his affidavit.

*Okie* v. *Spencer,* cited for defendant, is to be distinguished from the present case in several respects. There, the negotiation was made on the day the promissory note became due—the endorser was an accommodation party, and the check that was given for the note was drawn by new and different persons. In this case, the notes received for the bill contain no new party; they were not given until four months after the maturity of the bill, and the defendant does not aver that he was an accommodation drawer. The opinion of Kennedy, J., was cited in favour of these distinctions, from 2 Whart. 257–8.

The court held the matter under advisement until Saturday, 16th September, 1843, when

SERGEANT, J.—Discharged the rule.

[ Maples *v*. Hicks.]

On the trial of the cause, on the 20th March, 1844, it was shown, on the part of the defendant, that some four months after the bill sued upon was due and protested, the plaintiff received from the acceptor of the bill, without the consent of the defendant, three promissory notes, for the amount of the bill, interest and protest, at six, seven and eight months, and gave a receipt for the same, saying, that when the notes were paid, he was to return to him the bill in question.

The jury were charged as follows, by

HUSTON, J.—If a new note or bill is given by the same parties, no one being off who was on the old—the securities being of equal effect, the latter may not be an extinguishment of the former, and the holder may sue on either when the last has become due:—but if on the latter note or bill the name of the endorser is left off, and the new bill, payable at a future day, is accepted, without the knowledge, and, especially, if against the consent, of some third person, as endorser, it is giving time to the maker or acceptor, and discharges him whose name is left off, and against whose wish, or without whose knowledge the new security, payable at a future time, was taken; and the fact of interest being put in the last notes, and made principal, makes the case stronger.

The defendant, by giving written notice to sue at once, might possibly have been in a better situation, or he might, if this arrangement had not been made, have taken up the draft and sued immediately. The putting in the interest was a consideration. The new notes then prevented suit against the acceptor. This was done against the will of the drawer, and it is in effect giving time.

Verdict for the defendant.*

* Where the holder of a note has, without the consent of the endorser, by entering into a binding engagement with the maker, to give time, disabled himself from proceeding against him, the endorser is discharged, whether

the disability was incurred before or after judgment in a suit upon the note. *Manufacturers' Bank* v. *Bank of Pennsylvania*, 7 W. & S. 335. A judgment against the maker and endorser of a note, does not make them equally *principal* debtors. *Beebee* v. *West Branch Bank*, 7 W. & S. 375. But if the endorser consents to the giving of time, or for a sufficient consideration agrees with the maker to become the principal debtor, he will not be released. *Cowden's Estate*, 1 Barr 267.

Where an instrument was executed by the endorser of a promissory note, which had been protested for non-payment, reciting that the drawer was about making an arrangement with the holder for the renewal of the note, "*which is to be reduced from five to ten per cent. every sixty days,*" and agreeing that the protested note should be held as collateral security, and stipulating to take no advantage of any delay given ; which agreement was received by the holder, who gave several extensions without always exacting the stipulated reduction. *Held*, 1. That the agreement was founded on a sufficient consideration. 2. That the holder having accepted some renewals without exacting the reduction, had given time to the drawer, without the consent of the endorser, and could not recover on the original endorsement. *Dundas* v. *Sterling*, 4 Barr 73.

A levy on the goods of the drawer, and a release by order of the owner of the judgment, is a discharge of the endorser *pro tanto;* and the plaintiff cannot object that it is a nullity, because made by the sheriff without seeing the goods. *Bank* v. *Fordyce*, 9 Barr 276. And see generally 2 Am. Leading Cases, 339.